DAWN M. ROSS (SBN 143028)
ANGELA G. DENNIS (SBN 232598)
CARLE, MACKIE, POWER & ROSS LLP
100 B Street, Suite 400
Santa Rosa, California 95401
Telephone: (707) 526-4200
Facsimile: (707) 526-4707

Attorneys for Plaintiffs
LAKE COUNTY GRAPEVINE NURSERY
OPERATIONS LLC, LAKE COUNTY
GRAPEVINE NURSERY LLC, EKHARD
KAESEKAMP, and NEVADA VIEWPOINTE
WEST, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAKE COUNTY GRAPEVINE NURSERY OPERATIONS LLC; LAKE COUNTY GRAPEVINE NURSERY LLC; ECKHARD KAESEKAMP and NEVADA VIEWPOINTE WEST, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN NURSERY LLC; JOACHIN HOLLERITH; and DOES 1 through 100, inclusive, <br><br> Defendant(s). | Case No. CV 09-04877 VRW <br><br> **STIPULATION AND [PROPOSED] ORDER FOR A STAY PENDING ARBITRATION** <br><br> *Unlimited Civil Case* |

### STIPULATION

IT IS STIPULATED by the parties to this action that:

1. This action is stayed until arbitration has been had in accordance with the terms of the settlement agreement between the parties, a copy of which is attached as Exhibit A;

2. All currently scheduled deadlines and events are vacated; with the exception that the Injunction issued on October 20, 2009 will remain in full force and effect pending the arbitrator's decision; and

CARLE, MACKIE,
POWER & ROSS LLP

1

3. On or before July 16, 2010, and at six-month intervals thereafter, the parties shall file a joint status report advising the Court of the status of the arbitration.

Dated: ~~October 30, 2009~~ November 2, 2009

CARLE, MACKIE, POWER & ROSS LLP

_____
Dawn M. Ross
Attorneys for Plaintiffs
Lake County Grapevine Nursery Operations, LLC, Lake County Grapevine Nursery, LLC, Eckhard Kaesekamp, and Nevada Viewpointe West, Inc.

Dated: October 30, 2009

KOHUT & KOHUT LLP

_____
Richard A. DeLiberty
Attorneys for Defendants
American Nursery, LLC, and Joachim Hollerith

**ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: 11/6/2009

_____
IT IS SO ORDERED
Judge Vaughn R Walker
United States District Court
Northern District of California

EXHIBIT "A"

# SETTLEMENT AND GENERAL RELEASE AGREEMENT

This Settlement Agreement and General Release (hereinafter "Settlement Agreement") is made and entered into by and among the following parties: (1) American Nursery, LC, a Virginia limited liability company ("American"); (2) Joachim Hollerith ("Hollerith"); (3) Lake County Grapevine Nursery Operations LLC, a California limited liability company ("LCGNO"); (4) Lake County Grapevine Nursery LLC, a California limited liability company ("LCGN"); (5) Eckhard Kaesekamp ("Kaesekamp"); and (6) Nevada Viewpointe West, Inc., a Nevada corporation ("Nevada"). American and Hollerith are collectively referred to in this Settlement Agreement as "Joachim." LCGNO, LCGN, Kaesekamp, and Nevada are collectively referred to in this Settlement Agreement as "Eckhard." Joachim and Eckhard are hereinafter collectively referred to in this Settlement Agreement as the "Parties."

## RECITALS

This Settlement Agreement is made by and among the Parties with reference to the following facts:

A.  Hollerith and Kaesekamp own American. American promotes, markets and sells nursery products produced by LCGNO. LCGNO and LCGN are owned by Kaesekamp and Nevada.

B.  The nature of the relationship between American and LCGNO, whether that relationship be that of a joint venture or partnership, or that of a grower principal and a broker agent engaged in the joint promotion, marketing and sale of grower's products, is disputed between the Parties.

C.  LCGNO also purchased nursery products from American. Those nursery products are grown on a fifty acre parcel of real property located in Vacaville, California, leased by American, and hereinafter referred to by the Parties as the "Mother Block." The Mother Block nursery products include rootstock cuttings used by Lake County in the production of its own nursery products for subsequent sale throughout the North American market.

D.  As provided in this Settlement Agreement, Joachim and Eckhard desire to restructure and more clearly define their existing business relationships.

E.  Without admitting any liability or wrongdoing, the Parties also desire, by entering into this Settlement Agreement, and consummating the transactions contemplated in this Settlement Agreement, to resolve, compromise and settle, amongst themselves alone, all disputes, claims and controversies by or among them.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and for good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties, and each of them, warrant, represent, acknowledge, covenant, and agree as follows:

**1.    DEFINITIONS**

Unless otherwise defined in this Settlement Agreement, all capitalized terms used shall have the meanings given such terms in this Settlement Agreement. In addition, for the purposes of this Settlement Agreement only, the following specially defined terms shall have the following meanings:

**1.1    American.** American shall mean American Nursery, LC, a Virginia limited liability company, and each of its past, present, and future members, employees, agents, representatives, attorneys, predecessors, successors, grantees, transferees, and assigns. The term American, as used in this Settlement Agreement, shall not include Eckhard, or any of them.

**1.2    Hollerith.** Hollerith shall mean Joachim Hollerith, an individual, and each of his past, present, and future, executors, administrators, employees, agents, representatives, attorneys, grantees, transferees, and assigns. The term Hollerith, as used in this Settlement Agreement, shall not include Eckhard, or any of them.

**1.3    Lake County.** Lake County shall mean Lake County Grapevine Nursery Operations, LLC, a California limited liability company ("LCGNO"), and each of its past, present and future members, employees, agents, representatives, attorneys, predecessors, successors, grantees, transferees and assigns and Lake County Grapevine Nursery LLC, a California limited liability company ("LCGN") and each of its past, present and future members, employees, agents, representatives, attorneys, predecessors, successors, grantees, transferees and assigns. The term Lake County, as used in this Settlement Agreement, shall not include Joachim, or any of them.

**1.4    Kaesekamp.** Kaesekamp shall mean Eckhard Kaesekamp, an individual, and each of his past, present, and future, executors, administrators, employees, agents, representatives, attorneys, grantees, transferees, and assigns. The term Kaesekamp, as used in this Settlement Agreement, shall not include Joachim, or any of them.

**1.5    Nevada.** Nevada shall mean Nevada Viewpointe West, Inc., a Nevada corporation, and each of its past, present and future shareholders, directors, officers, employees, agents, representatives, attorneys, predecessors, successors, grantees, transferees, and assigns. The term Nevada, as used in this Settlement Agreement, shall not include Joachim, or any of them.

**1.6    Fees.** Fees shall mean and include all the fees for professional services rendered by all attorneys, paralegals, expert consultants and accountants and all expert witness fees, of any kind whatsoever, inclusive.

**1.7    Costs.** Costs shall mean and include all: (1) recoverable costs, including without limitation, disbursements and invoices of counsel, accountants and experts; and (2) costs as may be charged by any attorneys, expert consultants, accountants, and expert witness for photocopying, telephone usage, word processing time, computer research time, the preparation of demonstrative evidence, the video recording of depositions, postage, travel and meals, or for any other costs.

**1.8    Claim.** Claim shall mean any past, present, or future, fixed or contingent, matured or unmatured, liquidated or unliquidated, known or unknown, civil claims, causes of action, cross-claims, liabilities, obligations, rights, demands, damages, requests, suits, lawsuits, Fees, Costs, actions, administrative proceedings, or orders, whether in law or equity, and whether sounding in tort, contract, nuisance, trespass, negligence, strict liability, or any Federal or State statutory or common law claim or remedy of any type.

**1.9    Effective Time and Date Of This Settlement Agreement.** The Effective Time and Date of this Settlement Agreement shall be 7:45 p.m., Pacific Standard Time, on Monday, December 17, 2007.

**1.10    Conventions.** As used in this Settlement Agreement, the singular and masculine gender shall mean also the plural and feminine or neuter, as may be appropriate; the conjunctive includes the disjunctive and the disjunctive includes the conjunctive; and "each" and "all" includes each and every.

## 2. ASSIGNMENT BY KAESEKAMP OF MEMBERSHIP INTEREST IN AMERICAN TO HOLLERITH

**2.1    Assignment by Kaesekamp of Membership Interest in American to Hollerith.** Concurrently with the execution of this Settlement Agreement, Kaesekamp shall assign his membership interest in American to Hollerith. The assignment shall be evidenced by the following transactions and documents:

(a)    Agreement for Transfer of Membership Interest in American Nursery, LC, a Virginia limited liability company, in the form and content of **Exhibit A**, attached;

(b)    Assignment of Membership Interest in American Nursery, LC in the form and content of **Exhibit B**, attached;

(c)    Assignment and Assumption of Accounts in the form and content of **Exhibit C**, attached; and

(d) Bill of Sale in the form and content of **Exhibit D**, attached.

**2.2   Effective Time and Date of Assignment.** The Assignment shall be effective as of 7:45 p.m., Pacific Standard Time, on Monday, December 17, 2007.

### 3.   SETTLEMENT PAYMENTS

**3.1   Settlement Payments.** LCGNO and LCGN shall jointly pay to Joachim the total amount of One Million Fifty Thousand Dollars ($1,050,000.00) as follows:

(a) Two Hundred Fifty Thousand Dollars ($250,000.00), on or before January 31, 2008, for rootstock cuttings previously purchased by LCGNO from American. The source of these payments shall be from deposits made on American contracts for nursery products by third parties during the period beginning on December 18, 2007, and ending on January 31, 2008. Each payment shall be divided, upon receipt, fifty percent to LCGNO and fifty percent to Joachim, until such time as the full amount of the Two Hundred Fifty Thousand Dollars ($250,000.00) payment has been made, at which point the total amount of the remaining deposits shall be distributed to LCGNO.

(b) On the first day of each month beginning on March 1, 2008, and ending on February 1, 2012, LCGNO and LCGN shall jointly pay to Joachim a monthly payment in the total amount of $16,666.67. The total amount to be paid by LCGNO and LCGN to Joachim under this Paragraph 3.1(b) is Eight Hundred Thousand Dollars ($800,000.00). This amount, for tax reporting purposes, shall be treated and reported as a capital gain to Joachim, in such manner as Joachim shall decide.

(c) The payments referenced in paragraphs 3.1(a) and (b) shall be without interest so long as they are made timely and otherwise in accordance with the terms of this Settlement Agreement. In the event of default, under paragraphs 3.1(a) or (b), interest on the defaulted amounts of unpaid principal shall be at the rate of ten percent per annum so long as the default remains uncured.

(d) A scheduled payment will be late unless it is actually received by Joachim at the address set forth in Paragraph 3.2, below by the due date. In the event that a scheduled payment is not timely made, Joachim may, at its election, and after providing Eckhard with a written fifteen (15) day Notice to Cure, which may be given via U.S. Certified Mail sent to LCGNO's Clearlake Oaks, California office or via facsimile transmission sent to (707) 998-3522 and marked Attn: Eckhard Kaesekamp, accelerate the balance of the unpaid amounts owing under this Section 3.

**3.2   Payment of Settlement Payments.** The Settlement Payments referred to in Paragraph 3.1, above, shall be made payable to Joachim Hollerith and delivered to: Joachim Hollerith, c/o American Nursery LC, 48 Oaks Lane, Madison, Virginia 22727.

## 4. SECURITY FOR PERFORMANCE OF SETTLEMENT PAYMENT OBLIGATION

**4.1    Security for Payment.** As security for their performance under Section 3 of this Settlement Agreement, Kaesekamp and Nevada shall each pledge their membership interests in LCGNO and LCGN to Joachim. The Pledge Agreement shall be in the form and content of **Exhibit E**, attached.

## 5. AGREEMENT TO PURCHASE NURSERY PRODUCTS PRODUCED AT THE MOTHER BLOCK

**5.1    Agreement to Purchase Nursery Products Produced at the Mother Block.** Concurrently with the execution of this Agreement, LCGNO shall enter into an agreement with American to purchase the nursery products produced at the Mother Block in the form and content of **Exhibit F**, attached.

## 6. NON-COMPETITION AGREEMENT

**6.1    Non-Competition Agreement.** Concurrently with the execution of this Settlement Agreement, Joachim shall enter into a non-competition agreement in the form and content of **Exhibit G**, attached.

## 7. CONFIDENTIALITY

**7.1    Confidentiality.** The Parties, and each of them, represent and agree that with the exception of (a) any judicial proceeding where disclosure of this Settlement Agreement is ordered by the Court, (b) where disclosure is compelled by law or necessary to comply with any regulatory or financial reporting requirements applicable to a Party, or (c) in conjunction with the enforcement of the terms of this Settlement Agreement, the Parties, and their attorneys, will keep (i) the existence, terms, and conditions of this Settlement Agreement, (ii) the Settlement, and (iii) any and all actions taken by the Parties, or any of them, in conjunction with this Settlement, strictly confidential, and that the Parties, and their attorneys, will not disclose, discuss, or reveal any information concerning the foregoing to any Person, except the legal counsel, financial advisors, tax advisors, directors, officers, members, accountants, lenders and insurers for the Parties, and each of them, all of whom will be informed and be bound by this Confidentiality Provision. In response to inquiries about the status or resolution of any disputes between the Parties, the Parties, and their attorneys and agents, may say, in words or to the effect: "the matter has been resolved, but we are bound by Confidentiality Provisions not to say anything further." In the event of a breach or threatened breach by a Party or its agents or representatives of this Section 7.1, the other Parties shall be entitled to an injunction restraining such breach or threatened breach and the Parties hereto and each of them: (i) stipulate that such injunctive relief is right and proper, and (ii) waive any and all defenses to such injunctive relief. Nothing herein shall be construed as prohibiting a Party from pursuing any other available remedy at law or in equity for such breach or threatened breach, including without limitation such damages as may be proved at trial.

**7.2     Exceptions to Confidentiality Provisions.** Notwithstanding the confidentiality provisions stated in Section 7.1 hereinabove, upon execution of this Settlement Agreement each and every customer of American shall be promptly provided with a Joint Announcement Bulletin reflecting the Parties' restructuring of their business relationships and the immediate transfer of all production, promotion, marketing and sales activities pertaining to future sales and/or deliveries of Lake County grapevine nursery productions to Lake County's business headquarters in Clearlake Oaks, California. The Parties' Joint Announcement Bulletin shall be in the form and content attached hereto as **Exhibit H**. In addition, and notwithstanding the confidentiality provisions stated in Section 7.1 above, any and all future customer contacts, telephone calls and any other customer inquiries received by American which refer, relate or pertain in any way to LCGNO or LCGNO's grapevine nursery products shall be immediately referred by American and its representatives to LCGNO's business headquarters in Clearlake Oaks, California along with the correct telephone number and contact information as specified under this Settlement Agreement.

## 8.     NO DISPARAGING STATEMENTS.

**8.1     No Disparaging Statements.** Joachim and Eckhard agree not to make any disparaging statements to any person, entity, or governmental agency, about the other, or any of them, or otherwise attempt to injure or interfere with their reputation, affairs or their respective businesses. Joachim and Eckhard also agree that they will not, in the absence of a valid subpoena or court order, assist any individual or entity in the prosecution of any claim or grievance against the other, or any of them.

## 9.     NO OTHER CLAIMS

**9.1     No Claims by Joachim.** Joachim represents and warrants that they have not filed any complaints or charges or lawsuits against Eckhard, or any of them. Joachim agrees that they will not file any claims, complaints, charges, lawsuits or appeals regarding any of the Claims released in this Agreement against Eckhard, or any of them, with any governmental agency or court at any time hereafter, and that if any such agency or court assumes jurisdiction of any claim, complaint, charge, lawsuit or appeal against Eckhard, or any of them, on behalf of Joachim, they will request that such agency or court withdraw from, dismiss or otherwise close the matter.

**9.2     No Other Claims by Eckhard.** Eckhard agrees that they will not file any claims, complaints, charges, lawsuits or appeals regarding any of the Claims released in this Agreement against Joachim, or any of them, with any governmental agency or court at any time hereafter, and that if any such agency or court assumes jurisdiction of any claim, complaint, charge, lawsuit or appeal against Joachim, or any of them, on behalf of Eckhard, they will request that such agency or court withdraw from, dismiss or otherwise close the matter. As a condition of settlement Eckhard covenants to promptly dismiss any and all actions already filed in relation to any of the Claims released in this Agreement, and to bear their own costs and attorneys' fees incurred in relation to any such actions.

## 10. RELEASES

**10.1 Releases By Joachim.** Subject to the provisions of Section 11, below, Joachim, and each of them, for and on behalf of themselves and all others, fully and forever irrevocably release, acquit, and discharge Eckhard, and each of them, of and from any and all Claims, whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected, or foreseen or unforeseen, which Joachim, or any of them, have or assert, or may hereafter have or assert, against Eckhard, their agents, counsel and assignees, or any of them, by reason of any matter, cause or thing in any way relating to any contract (express, oral, written, implied in fact, or implied in law), order, judgment, liability, matter, cause, fact, thing, or act or omission on the part of Eckhard, or any of them, occurring or existing at any time prior to the Effective Time and Date. In addition, Joachim, and each of them, for and on behalf of themselves and all others, fully and forever irrevocably release, acquit, and discharge Eckhard, and each of them, of and from any and all Claims, whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected, or foreseen or unforeseen, which Joachim, or any of them, may have or may assert, against Eckhard, their agents, counsel and assignees, or any of them, by reason of any acts or omissions by Eckhard prior to the Effective Time and Date of this Settlement Agreement in relation to the employment or professional engagement (or offers of potential employment) of any individuals who have at any time been employed or otherwise engaged by Joachim in relation to the production, promotion, marketing or sale of LCGNO's grapevine nursery products at any time. All such Claims are hereinafter collectively referred to as the "Claims Released by Joachim").

**10.2 Releases By Eckhard.** Subject to the provisions of Section 11 below, Eckhard, and each of them, for and on behalf of themselves and all others, fully and forever irrevocably release, acquit, and discharge Joachim, and each of them, of and from any and all Claims, whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected, or foreseen or unforeseen, which Eckhard, or any of them, have or assert, or may hereafter have or assert, against Joachim, their agents, counsel or assigns, or any of them, by reason of any matter, cause or thing in any way relating to any contract (express, oral, written, implied in fact, or implied in law), order, judgment, liability, matter, cause, fact, thing, or act or omission on the part of Joachim, or any of them, occurring or existing at any time prior to the Effective Time and Date (collectively, the "Claims Released by Eckhard").

**10.3 Waiver Of Provisions Of California Civil Code Section 1542.** Joachim and Eckhard have disclosed all claims against each other of which they are aware. Except for a failure to disclose a known claim, Joachim and Eckhard, and each of them, acknowledge, warrant, and represent that they are aware of and familiar with Section 1542 of the California Civil Code, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING

Page 7 of 14

**THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

Joachim and Eckhard, and all of them, further acknowledge their understanding that, except for the provisions of this Section 10.3, the releases set forth in Sections 10.1 through 10.2, above, may not be effective to release the Claims Released by Joachim, or the Claims Released by Eckhard, to the extent any such Claims are not known or suspected to exist at the time of the execution of this Settlement Agreement by the Party or Parties releasing such Claims. Joachim and Eckhard, after consultation with their respective attorneys, hereby expressly acknowledge that the effective import of California Civil Code Section 1542 has been fully explained to them by their attorneys and agree that, notwithstanding the provisions of California Civil Code Section 1542, the Claims Released Joachim, and the Claims Released by Eckhard, include any and all such Claims that are not known or suspected to exist at the time of the execution of this Settlement Agreement, and, to the fullest extent necessary to make effective such releases by Joachim and Eckhard of such not known or suspected Claims, Joachim and Eckhard hereby expressly waive and relinquish all rights and benefits which they may have under California Civil Code Section 1542 or the law of any other state or jurisdiction, or common law principle, to the same or similar effect.

## 11. ADDITIONAL PROVISIONS REGARDING ALL RELEASES

**11.1 Exception To Releases.** Notwithstanding Section 10, above, the releases by the Parties shall not operate to release, and shall not apply to, any of the following categories of Claims: (a) Claims of Joachim, or any of them, amongst themselves; (b) Claims of Eckhard, or any of them, amongst themselves; (c) any future Claims which any Party may someday have concerning future acts or omissions by Joachim and Eckhard, or any of them after the Effective Time and Date of this Settlement Agreement; and (d) any Claims which any Party may have against the other for indemnity from and against any Claims made in the future by any "Third Party." For the purposes of this Settlement Agreement the term "Third Party" shall mean any person not a Party to this Settlement Agreement.

**11.2 Releases Do Not Extend To Certain Obligations.** Notwithstanding Section 10, above, the releases by the Parties shall not extend to or otherwise release or discharge any rights, privileges, benefits, duties, or obligations of any of the Parties by reason of, or otherwise arising under, this Settlement Agreement, or any of the transactions entered into between the Parties pursuant to the provisions of this Settlement Agreement.

**11.3 Beneficiaries Of Releases.** To the extent that the releases set forth in Section 10, above, run to the favor of any Persons who are not signatories to this Settlement Agreement, this Settlement Agreement is declared to be made in and for their respective benefits and uses.

**11.4 No Assignment Of Claims.** Each of the Parties warrants and represents that

none of the Claims it has released in Section 10, above, has been assigned or transferred, in whole or in part, by such Party to any Person, and that no other Person holds any interest in any such Claim. Each of the Parties agrees to protect, defend, indemnify and hold harmless each of the other Parties from and against any such Claims, (including, but not limited to, the payment of Fees and Costs actually incurred, whether or not litigation is commenced) based on, in connection with, or arising out of any such assignment or transfer by such Persons, or purported or claimed assignment or transfer.

**11.5  No Litigation.** The Parties, and each of them, agree that to the fullest extent permitted by law, they will never commence, aid in any way, prosecute or cause or permit to be commenced or prosecuted against the Parties, or any of them, any action or other proceeding (whether in contract, tort, or otherwise) based upon any of the Claims Released by Joachim and the Claims Released by Eckhard, or any of them. This Settlement Agreement shall constitute a judicial bar to the institution of any such action or proceeding.

## 12. ALTERNATIVE DISPUTE RESOLUTION

**12.1  Mediation.** Prior to the appointment of the arbitrator pursuant to Section 12.2, below, the Parties shall submit any and all disputes, claims or controversies arising out of this Settlement Agreement to JAMS for mediation. The Parties will cooperate with JAMS and with one another in selecting a mediator from JAMS' panel of neutrals, and in promptly scheduling the mediation proceedings. Subject to his availability and willingness to serve, the Parties agree that the mediator will be the Hon. W. Scott Snowden. The Parties covenant that they will participate in the mediation in good faith and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the Parties, their agents, employees, experts and attorneys, and by the mediator or any JAMS' employees, are confidential, privileged and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the Parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation. If a dispute is not resolved within thirty (30) days from the date of the submission of the dispute to mediation (or such later date as the Parties may mutually agree in writing), the administration of the arbitration shall proceed forthwith. The mediation may continue, if the Parties so agree, after appointment of the arbitrator. Unless otherwise agreed by the Parties, the mediator shall be disqualified from serving as arbitrator in the case. The pendency of a mediation shall not preclude a Party from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, and the Parties agree not to defend against any application for provisional relief on the ground that the mediation is pending.

**12.2  Arbitration.** The parties agree that any and all disputes, claims or controversies arising out of, or relating to this Settlement Agreement, shall be submitted to JAMS, or its successor, for mediation and, if the matter is not resolved through mediation, then it shall be submitted to JAMS, or of successor, for final and binding arbitration pursuant to the arbitration rules then in effect. The arbitration shall take place before one (1) arbitrator and shall be

conducted in Sonoma County, California. The arbitration shall be administered by JAMS pursuant to its comprehensive arbitration rules and procedures. Judgment on the award may be entered in any court having jurisdiction. This clause shall not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

**12.3   Enforcement of this Settlement Agreement.** In the event of any dispute, claim, mediation, or arbitration based upon, arising out of, or relating to, the breach, enforcement or interpretation of any of the provisions of this Settlement Agreement, or where any provision of the Settlement Agreement is validly asserted as a defense, the prevailing party or parties in such dispute, claim, mediation, or arbitration, shall be entitled to recover its or their Fees and Costs which are reasonably incurred from the non-prevailing party or parties. In addition to the fees and costs recoverable under the preceding sentence, the parties agree that the prevailing party shall be entitled to recover reasonable fees and costs incurred in connection with the enforcement of a judgment arising from such action or proceeding. The provisions of the preceding sentence shall be severable from the other provisions of this Settlement Agreement and shall survive the entry of any such judgment.

## 13.   DIVISION OF AMERICAN MONIES ON ACCOUNT

**13.1   Division of Monies.** As of the Effective Date and time, the amount on deposit at American was Seventy-One Thousand One Hundred Eighty None Dollars ($71,189). On or before March 1, 2008, 16.67% of these monies shall be distributed to Joachim and the balance to Lake County.

## 14.   MISCELLANEOUS PROVISIONS

**14.1   Amendments.** Neither this Settlement Agreement, nor any term set forth in this Settlement Agreement may be changed, waived, discharged, or terminated, orally or in writing, except that any term of this Settlement Agreement may be amended by a writing signed by the Parties, and the observance of any such term may be waived (either generally or in a particular instance either retroactively or prospectively) by a writing signed by the Parties against whom such waiver is to be asserted.

**14.2   Interpretation.** This Settlement Agreement shall be construed according to its fair meaning and not strictly for or against any party. All references to a document or agreement in this Settlement Agreement shall mean and refer to such document or agreement as amended to date, even if any such amendment is not referenced herein.

**14.3   No Admission Of Liability.** The Parties agree that this Settlement Agreement is the result of a compromise and accord, and that the execution and delivery of this Settlement Agreement by any of the Parties shall not constitute or be construed as an admission of any liability or wrongdoing on the part of any them. The provisions of California Evidence Code Sections 1152 and 1154 shall apply to the transactions contemplated by this Settlement Agreement.

**14.4  Reliance Upon Representations.** Each of the Parties acknowledges that, but for the provision of each of the warranties, representations, and acknowledgements set forth in this Settlement Agreement, none of the other Parties would enter into this Settlement Agreement.

**14.5  Attorneys' Fees, Costs, And Expenses.** Each of the Parties shall bear its own Attorneys' Fees, Costs, and Expenses in connection with the matters set forth in this Settlement Agreement, including, but not limited to, the negotiations for and preparation of this Settlement Agreement.

**14.6  Entire And Integrated Settlement Agreement.** This Settlement Agreement is intended by the Parties as a final expression of their agreement and is intended to be a complete and exclusive statement of the agreement and understanding of the Parties with respect to the subject matters contained in this Settlement Agreement. This Settlement Agreement supersedes any and all prior promises, representations, warranties, agreements, understandings, or undertakings with respect to such subject matters set forth or referred to in this Settlement Agreement.

**14.7  Severability.** If any provisions of this Settlement Agreement shall, for any reason or to any extent, be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Settlement Agreement shall be interpreted so as best to reasonably effect the intent of the Parties.

**14.8  Time.** The time in which an act under this Settlement Agreement is to be done shall be computed by excluding the first day and including the last day. If the last day of any time period stated herein shall fall on a Saturday, Sunday or legal holiday, then the duration of such time period shall be extended so that it shall end on the next succeeding day which is not a Saturday, Sunday, or legal holiday.

**14.9  Third Party Challenge To Settlement Agreement.** In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a party of this Settlement Agreement to invalidate, interpret, or prevent the validation, enforcement, or carrying out of all or any of the provisions of this Settlement Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposition to such action or proceedings.

**14.10  Governing Law.** The Settlement Agreement is entered into and shall be governed, construed, and interpreted in accordance with the substantive and procedural laws and rules of the State of California.

**14.11  Headings.** The section titles, captions, and headings contained in this Settlement Agreement are inserted only as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Settlement Agreement or the intent of any of its provisions.

**14.12 Recitals.** The Recitals set forth at the beginning of this Settlement Agreement and the other provisions hereof shall not be admissible to prove the truth of the matters asserted in such Recitals or other provisions in any proceeding involving any of the Parties (other than an action or proceeding brought to enforce the terms of this Settlement Agreement), nor do any of the Parties intend such Recitals or other provisions to constitute admissions of fact by any of them.

**14.13 Authorization.** Each of the Parties represents and warrants that: (a) it is fully authorized to enter into this Settlement Agreement, (b) it has read and fully understands each of the provisions of the Settlement Agreement, (c) it has relied on the advice and representation of legal counsel of its own choosing with respect to the matters set forth in this Settlement Agreement, (d) it has signed the Settlement Agreement voluntarily, without any duress or undue influence on the part, or on behalf, of any Party, and (e) the terms of this Settlement Agreement are contractual and not merely recitals. In addition, each of the partnership Parties represents and warrants that it is duly organized and existing in good standing under the laws of one of the states of the United States, has taken all necessary partnership and internal legal actions to duly approve the making and performance of this Settlement Agreement and that no further internal approval is necessary, and the making and performance of this Settlement Agreement will not violate any provision of law or the Party's organizational Agreement or other documents.

**14.14 Additional Necessary Documents.** The Parties, and each of them, agree to execute such additional documents as may be reasonably required in order to carry out the purpose and intent of this Settlement Agreement, or to evidence anything contained in this Settlement Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

02/06/2008  16:47   707-546-1360              CLEMENT LAW FIRM                      PAGE 03/15

**14.15 Execution In Counterparts.** This Settlement Agreement may be signed by the Parties in counterparts, and the signature pages may be combined to create a document binding on all of the Parties and together they shall constitute one and the same instrument. This Settlement Agreement may be executed via facsimile signature with such facsimile signatures functioning as original signatures.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth opposite their respective signatures below.

AMERICAN NURSERY LC, a Virginia limited liability company

DATED: February 6, 2008

By: _____
Joachim Hollerith, its Manager

DATED: February 6, 2008

By: _____
Joachim Hollerith, an individual

LAKE COUNTY GRAPEVINE NURSERY OPERATIONS, LLC, a California limited liability company

DATED: January ___, 2008

By: _____
Eckhard Kaesekamp, its Manager

LAKE COUNTY GRAPEVINE NURSERY, LLC a California limited liability company

DATED: January ___, 2008

By: _____
Eckhard Kaesekamp, its Manager

DATED: January ___, 2008

By: _____
Eckhard Kaesekamp, an individual

NEVADA VIEWPOINTE WEST, INC., a Nevada corporation

DATED: January ___, 2008

By: _____
John Fancsy, its President

14.15 <u>Execution In Counterparts.</u> This Settlement Agreement may be signed by the Parties in counterparts, and the signature pages may be combined to create a document binding on all of the Parties and together they shall constitute one and the same instrument. This Settlement Agreement may be executed via facsimile signature with such facsimile signatures functioning as original signatures.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth opposite their respective signatures below.

**AMERICAN NURSERY LC, a Virginia limited liability company**

DATED: January ____, 2008

By: _____
Joachim Hollerith, its Manager

DATED: January ____, 2008

By: _____
Joachim Hollerith, an individual

**LAKE COUNTY GRAPEVINE NURSERY OPERATIONS, LLC, a California limited liability company**

DATED: ~~January~~ *Feb 1. 08*, 2008

By: _____
Eckhard Kaesekamp, its Manager

**LAKE COUNTY GRAPEVINE NURSERY, LLC a California limited liability company**

DATED: ~~January~~ *Feb 1. 08*, 2008

By: _____
Eckhard Kaesekamp, its Manager

DATED: ~~January~~ *Febr. 08*, 2008

By: _____
Eckhard Kaesekamp, an individual

**NEVADA VIEWPOINTE WEST, INC., a Nevada corporation**

DATED: January ____, 2008

By: _____
John Fancsy, its President

FROM : LAKE COUNTY GRAPEVINE NURSERY    PHONE NO. : 7079983522             Feb. 06 2008 04:26PM P3
02/06/2008  14:45   757-   -7847        EWING & ASSOCIA                    PAGE  03/03
02/06/2008  17:44   VIEWPOINTE ESTATE WINERY → 17072537047                 NO.895  001
02/05/2008  13:16   707-253-7047        EWING & ASSOCIATES                 PAGE  14/24

14.15 **Execution In Counterparts.** This Settlement Agreement may be signed by the Parties in counterparts, and the signature pages may be combined to create a document binding on all of the Parties and together they shall constitute one and the same instrument. This Settlement Agreement may be executed via facsimile signature with such facsimile signatures functioning as original signatures.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth opposite their respective signatures below.

AMERICAN NURSERY LC, a Virginia limited liability company

DATED: January ___, 2008

By: _____
Joachim Hollerith, its Manager

DATED: January ___, 2008

By: _____
Joachim Hollerith, an individual

LAKE COUNTY GRAPEVINE NURSERY OPERATIONS, LLC, a California limited liability company

DATED: ~~January~~ Feb. 6/08, 2008

By: _____
Eckhard Kaesekamp, its Manager

LAKE COUNTY GRAPEVINE NURSERY, LLC a California limited liability company

DATED: ~~January~~ Feb. 6/08, 2008

By: _____
Eckhard Kaesekamp, its Manager

DATED: ~~January~~ Feb. 6/08, 2008

By: _____
Eckhard Kaesekamp, an individual

NEVADA VIEWPOINTE WEST, INC., a Nevada corporation

DATED: ~~January~~ February 6, 2008

By: _____

Page 13 of 14

02/06/2008  13:16    707-26_7047           EWING & ASSOCIATES                    PAGE   15/24

## KAESEKAMP SPOUSAL CONSENT

The undersigned is the spouse of Eckhard Kaesekamp and acknowledges that she has read the foregoing Settlement and General Release Agreement (the "Settlement Agreement") having an effective time and date of 7:45 p.m., Pacific Standard Time, on Monday, December 17, 2007, and understands its provisions. The undersigned hereby expressly approves of the provisions of the Settlement Agreement in its entirety.

_____
Brigitte Kaesekamp

Page 14 of 14